**SPORTS FORM, INC., a Nevada corporation, Plaintiff-Appellant,**

v.

**UNITED PRESS INTERNATIONAL, INC., a Delaware corporation, Defendant-Appellee.**

**Nos. 81–5647, 81–5847.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 1982.

Decided Aug. 27, 1982.

Mark R. Denton, Denton & Denton, Ltd., Las Vegas, Nev., for plaintiff-appellant.

Diane P. Zielinski, Cleveland, Ohio, argued, for defendant-appellee; Edward S. Coleman, Las Vegas, Nev., Baker & Hostetler, Cleveland, Ohio, on brief.

Before CHAMBERS, WALLACE and NORRIS, Circuit Judges.

WALLACE, Circuit Judge:

Sports Form, Inc. (Sports Form) appeals from a district court order denying its motion for a preliminary injunction. We affirm.

I

Sports Form disseminates horse racing information to bookmakers in Nevada. It purchases its information from United Press International (UPI) under a contract which requires that UPI furnish and Sports Form purchase three news wires—the Unirace Wire and the Supplemental Wire, which supply horse racing information, and the Sports Wire, which supplies general sports information.

Sports Form alleges that it contracted for all three wire services only because UPI refused to sell it the Unirace Wire separately and argues that UPI's insistence on selling the three wire services as a package constitutes an illegal tying arrangement. Sports Form's complaint sought preliminary and permanent injunctive relief requiring UPI to continue to provide Sports Form the

Unirace Wire. It also sought a declaration that it was not required to pay for the Supplemental and Sports Wires and was relieved of liability for services provided before the action was initiated.

UPI alleges that Sports Form requested UPI provide it with the same wire services which it provided to Sports Form's principal competitor, Swanson News (Swanson), and that the contract for the three wire services was prepared upon that representation. Swanson receives all three wire services. UPI counterclaimed for amounts due on services provided prior to initiation of the action and for the per diem charges for services rendered after that date.

Based upon the record before him, the district judge found that at all times prior to the execution of the contract, Sports Form represented to UPI its desire to purchase the same services which UPI provided to Swanson. The district court therefore concluded that Sports Form was estopped from claiming that the contract was one of adhesion or that UPI had conditioned its sale of the Unirace Wire service on Sports Form's purchase of Supplemental and Sports Wires. The district court held that Sports Form had failed to demonstrate any chance that it would prevail on the merits and denied its motion for a preliminary injunction.

## II

■ The grant or denial of a motion for a preliminary injunction lies within the discretion of the district court. Its order granting or denying the injunction will be reversed only if the district court relied on an erroneous legal premise or abused its discretion. *Wright v. Rushen*, 642 F.2d 1129, 1132 (9th Cir. 1981); *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980) (*L. A. Coliseum*). A district court's order is reversible for legal error if the court does not employ the appropriate legal standards which govern the issuance of a preliminary injunction, *id.; see Benda v. Grand Lodge of International Association of Machinists & Aerospace Workers*, 584

F.2d 308, 314–15 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979) (*Benda*); *Aguirre v. Chula Vista Sanitary Service & Sani-Tainer, Inc.*, 542 F.2d 779, 781 (9th Cir. 1976), or if, in applying the appropriate standards, the court misapprehends the law with respect to the underlying issues in litigation. *Wright v. Rushen, supra*, 642 F.2d at 1132; *L. A. Coliseum, supra*, 634 F.2d at 1200; *Kennecott Copper Corp., etc. v. Costle*, 572 F.2d 1349, 1357 n.3 (9th Cir. 1978).

■ However, unless the district court's decision relies on erroneous legal premises, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case. Rather, the appellate court will reverse only if the district court abused its discretion. *Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1133 & n.8 (9th Cir. 1979). To determine whether there has been an abuse of discretion, the reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... The [reviewing] court is not empowered to substitute its judgment for that of the [district court]." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (citations omitted). Review of an order granting or denying a preliminary injunction is therefore much more limited than review of an order involving a permanent injunction where all conclusions of law are freely reviewable.

■ Abuse of discretion may also occur when the district court rests its conclusions on clearly erroneous findings of fact. *See Buchanan v. United States Postal Service*, 508 F.2d 259, 267 n.24 (5th Cir. 1975); *Unicon Management Corp. v. Koppers Co.*, 366 F.2d 199, 203 (2d Cir. 1966). A finding of fact is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948);

*Edinburgh Assurance Co. v. R. L. Burns Corp.*, 669 F.2d 1259, 1261 (9th Cir. 1982). Our review of the district court's findings, pursuant to its action on a motion for preliminary judgment is, of course, restricted to the limited record available to the district court when it granted or denied the motion. The district court's findings supporting its order granting or denying a permanent injunction may differ after presentation of all the evidence and so may our determination as to whether its subsequent findings are clearly erroneous.

We emphasize the ways in which review of an order granting or denying a preliminary injunction differs from review of an order involving a permanent injunction because we are persuaded that in some cases, parties appeal orders granting or denying motions for preliminary injunctions in order to ascertain the views of the appellate court on the merits of the litigation. Because of the limited scope of our review of the law applied by the district court and because the fully developed factual record may be materially different from that initially before the district court, our disposition of appeals from most preliminary injunctions may provide little guidance as to the appropriate disposition on the merits. Furthermore, in many cases, appeal of district courts' preliminary injunctions will result in unnecessary delay to the parties and inefficient use of judicial resources. We think it likely that this case, for instance, could have proceeded to a disposition on the merits in far less time than it took to process this appeal. Furthermore, our disposition of this appeal will affect the rights of the parties only until the district court renders judgment on the merits of the case, at which time the losing party may again appeal.

### III

We now apply the law to the facts of this case. The legal standards governing the issuance of a preliminary injunction in this circuit are clear. The moving party may meet its burden by demonstrating either "a combination of probable success on the mer-its and the possibility of irreparable injury" or "that serious questions are raised and the balance of hardships tips sharply in its favor." *Wright v. Rushen, supra*, 642 F.2d at 1132; *L. A. Coliseum, supra*, 634 F.2d at 1201. The "irreducible minimum," however, is that the moving party demonstrate "a fair chance of success on the merits" or "questions ... serious enough to require litigation." *Benda, supra*, 584 F.2d at 315. "No chance of success at all ... will not suffice." *Id.*

■ The district judge applied this standard. He held that Sports Form had failed to show any chance of success on the merits. That conclusion made a determination of potential injury or a balancing of hardships unnecessary. The district judge's decision rested on his finding that at all times prior to the execution of the contract, Sports Form represented its desire to purchase the same services as Swanson, and on his conclusion that Sports Form was therefore estopped from claiming that UPI had tied the sale of two unwanted wires to the sale of one desired wire.

■ The district court's finding as to Sports Form's representations is not clearly erroneous. The attorney who represented Sports Form in its license application before the Nevada Gaming Commission testified that he had advised Sports Form that it needed to secure the same services being purchased by Swanson in order to maximize its chances for success in its license application. He also admitted testifying to the Gaming Commission that Sports Form had "secured a letter of commitment from [UPI] to provide race results and other such services as are furnished by the agency to Swanson News." Furthermore, DiRocco, the owner of Sports Form, testified that it was not until after signing the contract with UPI that he determined that he did not need the Supplemental and Sports Wires. DiRocco testified that he tried to renegotiate the contract before signing it, but his testimony on this point was confusing. At times, he seemed to assert that he sought more information regarding the contract's terms and at other times that he

sought to renegotiate the terms of the agreement. The district judge's findings demonstrate that he discredited DiRocco's testimony with respect to pre-execution attempts at renegotiation. Based upon the limited record before us, we cannot fault the district judge in this determination.

The district court did not err in concluding that, under these circumstances, Sports Form could not make out a tying arrangement. Neither the district court nor UPI cited any authority for casting these conclusions in estoppel language. However, it is clear that "some modicum of coercion" must be shown in order to make out a tying arrangement. *See Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1216 (9th Cir. 1977). *See also Northern Pacific Railway v. United States*, 356 U.S. 1, 6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958) (conditions of sale "exacted"). Where a company is simply sold what it wishes to buy, there can be no tying problem.

The only remaining question is whether the district court abused its discretion when it found that Sports Form had failed to demonstrate any chance of success on the merits. We intimate no view with respect to how we would decide that question on the merits, were it before us. However, we conclude that the district court did not abuse its discretion at this preliminary stage when it concluded that, applying the law to the facts as it found them, Sports Form had demonstrated no chance of success on the merits.

AFFIRMED.