**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TELEGRAM MESSENGER, INC., | No.  18-16695 |
| Plaintiff-counter-defendant-Appellee, | D.C. No. 3:18-cv-02811-CRB |
| v. | MEMORANDUM[*] |
| LANTAH, LLC, | |
| Defendant-counter-claimant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted March 12, 2019
San Francisco, California

Before:  WALLACE, TASHIMA, and McKEOWN, Circuit Judges.

Telegram Messenger, Inc. and Lantah, LLC are entities developing cryptocurrencies, a form of digital currency.  Each plans to call its cryptocurrency "GRAM."  Telegram sought to enjoin Lantah from using the GRAM mark, and the district court issued a preliminary injunction.  We have jurisdiction under 28

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

U.S.C. § 1292, and we affirm.

We review for abuse of discretion an order granting a preliminary injunction. *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). In doing so, "we employ a two-part test: first, we 'determine de novo whether the trial court identified the correct legal rule to apply to the relief requested'; second, we determine 'if the district court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" *Id.* (quoting *Cal. Pharmacists Ass'n v. Maxwell–Jolly*, 596 F.3d 1098, 1104 (9th Cir. 2010)).

I.

"A party can obtain a preliminary injunction by showing that (1) it is 'likely to succeed on the merits,' (2) it is 'likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in [its] favor,' and (4) 'an injunction is in the public interest.'" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). The parties only dispute the first element, which turns on whether Telegram first used the mark in commerce before Lantah filed its intent-to-use application and therefore has priority, i.e., the right to enjoin Lantah from using the mark. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

"Use in commerce" means the "bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. A mark "shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." *Id.* "In determining whether . . . the 'use in commerce' test ha[s] been satisfied, we have . . . generally followed a 'totality of the circumstances' approach." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1205 (9th Cir. 2012). This approach turns on whether the mark was used "in a way sufficiently public to identify or distinguish the marked [services] in an appropriate segment of the public mind." *Id.* (quoting *New W. Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1200 (9th Cir. 1979)). Relevant factors include not only "evidence of actual sales, or lack thereof," but also non-sales activity including:

> [1] the genuineness and commercial character of the activity, [2] the determination of whether the mark was sufficiently public to identify or distinguish the marked service [or good] in an appropriate segment of the public mind as those of the holder of the mark, [3] the scope of the non-sales activity relative to what would be a commercially reasonable attempt to market the service [or good], [4] the degree of ongoing activity of the holder to conduct the business using the mark, [5] the amount of business transacted, and [6] other similar factors

*Id.* (quoting *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001)). Although Telegram questions whether the totality of the circumstances test is applicable here, our precedents make clear that it does. *See id.*; *Chance*, 242 F.3d at 1159.

3

A close reading of the district court's opinion demonstrates that it applied, at least implicitly, the totality of the circumstances test. The district court reasoned that Telegram entered into contracts—titled "PURCHASE AGREEMENT FOR GRAMS"—with various buyers. The purchase agreements required the buyers to pay Telegram by a specified payment date in exchange for the right to receive the agreed-upon number of GRAMs in the future. Pursuant to these agreements, Telegram received $850 million, which it publicly disclosed in an SEC filing, although the filing did not mention the GRAM mark. The district court also pointed to several publications that reported on Telegram's efforts to offer the GRAM cryptocurrency. Although Telegram ultimately did not provide GRAM to its buyers, the district court's conclusion that such pre-sales activity demonstrates Telegram's use in commerce was not illogical, implausible, or without support from the record. Accordingly, the district court did not abuse its discretion.

## II.

We also recognize that the district court stayed the case pending appeal of the preliminary injunction. We have repeatedly admonished district courts not to delay trial preparation to await an interim ruling on a preliminary injunction. *See, e.g.*, *Melendres v. Arpaio*, 695 F.3d 990, 1002–03 (9th Cir. 2012); *Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007). "Because of the limited scope of our review of the law applied by the district court

4

and because the fully developed factual record may be materially different from that initially before the district court, our disposition of appeals from most preliminary injunctions may provide little guidance as to the appropriate disposition on the merits." *Melendres*, 695 F.3d at 1003 (quoting *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982)). This case could have well proceeded to a disposition on the merits without the delay in processing the interlocutory appeal. "Given the purported urgency of" the claims involved, the parties might "have been better served to pursue aggressively" the resolution of the case in the district court, "rather than apparently awaiting the outcome of this appeal." *Global Horizons*, 510 F.3d at 1059. Accordingly, we urge the district court promptly to lift the stay.

     **AFFIRMED.**